DAVID KREIGH *et al.*

*v.*

THE CITY OF CHICAGO.

</div>

| 86 | 407 |
| 23a | 108 |
| 86 | 407 |
| 124 | 556 |
| 86 | 407 |
| 134 | 172 |
| 86 | 407 |
| 136 | 406 |
| 136 | 571 |
| 86 | 407 |
| 148 | 62 |
| 86 | 407 |
| 150 | 524 |
| 86 | 407 |
| 171 | 160 |
| 171 | 371 |

1. MUNICIPAL CORPORATION —*power over streets.* A city holds its streets in trust for the public, and has no power to alienate them to others or divest itself of control over them, by conferring rights therein inconsistent with its duty to the public to keep them open and improve them for use as streets.

2. SAME —*surrender of control over streets.* The power to establish and open streets, and to improve and repair the same, being vital to the well-being of municipal coporations, it will never be presumed that the Legislature, having invested them with this power, has at the same time authorized them to surrender it to others, over whose acts they can exercise no control.

3. STATUTE CONSTRUED —*relating to parks.* The 38th section of chapter 105 of the Revised Statutes of 1874, entitled "Parks," authorizing the connecting contiguous parks by boulevards or pleasure-ways, and putting such boulevards or pleasure-ways under the control of park commissioners, the same as other public grounds established by them, has no reference to prior established streets, and does not authorize the park commissioners to purchase or acquire established streets, or the city authorities to surrender control over them.

4. STREETS —*effect of ordinance giving park commissioners control of street.* The city of Chicago having no authority to divest itself of control over its streets, an ordinance setting apart a street for a pleasure-way, under the law relating to parks, and attempting to give the park commissioners control over the same, may be regarded as a license protecting such commissioners and those acting under them from prosecution for interfering with such street, but not as divesting the city of its power and relieving it of its duty to widen and improve the same as the public necessity may require.

APPEAL from the Superior Court of Cook County; the Hon. JOHN A. JAMESON, Judge, presiding.

This is an appeal from a judgment confirming an assessment for the opening and widening of West Washington street, in Chicago, rendered by the Superior Court of Cook County, at its May term, 1877.

The point relied on in the argument for a reversal of the judgment was the overruling, by the court below, of a motion to dismiss the proceeding on the ground that the city had no authority to interfere with the street, having previously invested the West Chicago Park Commissioners with exclusive control thereover. The facts relied upon to sustain the motion are these :

On September 19, 1873, the West Chicago Park Commissioners adopted this resolution :

" The special committee to whom has been referred the communication of the president recommending the appointment of a committee to designate the streets which should be widened and improved as boulevards, from the more thickly populated park district to the parks, submitted their report, and recommended the adoption of the following resolution :

"And whereas it is desirable to connect Central Park with other portions of the park district in which this park is located, and this board having full power and authority to make and designate the line of such connection, by virtue of section 12 of an act of the General Assembly, entitled 'An act in regard to the completion, improvement, and management of public parks and boulevards, and to provide a more efficient remedy for the collection of delinquent assessments,' approved May 2d, 1873, be it

"*Resolved*, That Washington street, from the Chicago and Northwestern Railroad to Central Park, be, and the same is hereby, selected and designated as a boulevard and pleasure-way, pursuant to the provisions of said section 12 ; and that such boulevard or pleasure-way shall be under the control and management of this board, the same as other grounds by them established."

On March 26, 1874, the common council of the city of

Chicago passed an ordinance for the opening and widening of West Washington street, from the Chicago and Northwestern Railroad to Central Park, to the width of 100 feet. On April 3, 1874, the petition under which the present condemnation was had was filed.

On June 1, 1874, the common council adopted the following ordinance:

" Whereas, under and by virtue of an act of the General Assembly of this State, in force July 1st, 1873, the West Chicago Park Commissioners have selected and designated Division street, from Milwaukee avenue to Humboldt Park; Washington street, from the Chicago and Northwestern Railroad crossing to Central Park; Twelfth street, from Ashland avenue to Ogden avenue, and Ogden avenue, from West Twelfth street to the west line of Douglas Park, as boulevards or pleasure-ways, to connect said Humboldt, Central, and Douglas Parks with the more thickly settled portions of the park district; therefore,

" *Be it ordained by the Common Council of the city of Chicago,* That the said West Chicago Park Commissioners be, and they are hereby, authorized to improve, control and manage the said several streets above described, the same as other public grounds by them established."

There was oral evidence that the Park Commissioners did some grading on the street in the autumn of 1874, and graveled it in the spring of 1875. The grading in the fall of 1874, however, was not in the way of taking possession, but after the commissioners graveled, in the spring of 1875, they put policemen on it and took charge of it.

Meanwhile the city, notwithstanding the ordinance of the council, and the acts of the Park Commissioners, proceeded with the condemnation proceedings, and judgment was finally rendered thereon as before stated.

Messrs. MONROE, BISBEE & BALL, for the appellants.

Mr. FRANCIS ADAMS, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Waiving the question whether appellant's motion to dismiss the proceedings was made in apt time, we are of opinion that the case is against him upon its merits.

West Washington street was one of the streets of the city of Chicago, duly laid out and established by it as such, long prior to the institution of the proceedings claimed to divest the city of control over it; and the city has always been, under the laws constituting its charter, possessed of exclusive power to establish, alter, and improve streets. Tuley's Laws & Ord. 1873, p. 45, clauses 22, 23, 28, 30–33; id. 407, clauses 54, 55. See, also, Rev. Stat. 1874, ch. 14, art. 5, sec. 62, clauses 7–25 inclusive.

It was held in *City of Alton* v. *Transportation Company,* 12 Ill. 60, that the city holds grounds dedicated to public use, for the purposes for which they were dedicated only, and can not alienate them or divert them to other uses. And we held, in *City of Quincy* v. *Jones,* 76 Ill. 231, that a city holds its streets in trust for the public, and has no authority to alienate them to others, or divest itself of control over them by conferring rights or easements therein inconsistent with their duty to the public to keep them open and improve them for use as streets.

The authority to establish and open streets, and improve and keep them in repair as the public necessities require, is vital to the well being of municipal corporations; and it is never to be presumed that the Legislature, having invested them with this power, has, at the same time, authorized them to surrender it to others over whose acts they can exercise no control. It devolves on those who assert the existence of such an extraordinary authority to prove it by the clear letter of the law.

The claim here is that such authority is conferred by the 38th section of chapter 105 of the Revised Statutes of 1874, entitled "Parks," page 747, which is as follows:

" *Be it further enacted*, That in cases where, by virtue of an act or acts heretofore passed, public parks or boulevards have been designated or established in two or more towns, contiguous to each other, and where the commissioners, authorized by such act or acts to locate such parks or boulevards, shall desire to connect the same by a boulevard or pleasure-way, so as to form a contiguous improvement, or shall desire to connect such park with other portions of the park district in which such park is located by a boulevard or pleasure-way, it shall and may be lawful for such commissioners to select and designate the line of such boulevard or pleasure-way, and to acquire title to the lands which may be necessary to make such connection, by purchase or otherwise; and in case such commissioners can not agree with the owner or owners, lessee or occupant, of any of the real estate so selected, they may proceed to procure the condemnation of the same in such manner as is now or may be prescribed by any general law for the condemnation of lands for public use; and the cost and expense of acquiring title to such land shall be levied upon and collected by special assessment upon the property deemed specially benefited by the location of such boulevard or pleasure-way, in the same manner as the costs of other lands for parks and boulevards is assessed under the several acts creating such boards, and such boulevard or pleasure-way shall be under the control and management of such Park Commissioners, the same as other public grounds by them established."

This, very clearly, has no reference to established streets; and does not profess either to authorize the Park Commissioners to purchase or acquire established streets, or the city of Chicago to surrender its control over its streets to them. It has reference solely to the laying out and opening of streets, for the purpose indicated, by the Park Commissioners over lands to be acquired for that purpose; and confers, therefore, the right of condemnation, which they could not otherwise exercise.

The ordinance of June 1, 1874, may be regarded as a license sufficiently protecting the Park Commissioners and those acting under them from liability to prosecution for interfering with the streets; but it can not be regarded as divesting the city of its power, and relieving it of its duty, to widen and improve the streets as public necessities require, because there was no authority in law for the council to adopt an ordinance having that effect. There is no pretense that private rights have vested which it would be inequitable to disturb, on the faith of the ordinance; and this court has never recognized the doctrine that a municipal corporation can, by its acts alone, invest itself with a power not conferred by its charter, or divest itself of a power which its charter confers.

We think the motion to dismiss was properly overruled. Perceiving no error in the record, the judgment is affirmed.

*Judgment affirmed.*