## DENVER TRAMWAY CO. v. LONDONER, MAYOR, ET AL.

MUNICIPAL GRANT—SUBSEQUENT ACTION.

The city of Denver passed an ordinance granting the right of way through its streets to a street railway company to construct its road and operate its cars by electricity; this was done by the city before its charter contained any express provision authorizing such grant; subsequently the charter was amended authorizing the city to grant right of way for such purpose; and thereupon the city passed ordinances recognizing its prior grant as valid, and providing specially for its enjoyment to a certain extent; acting upon such legislative and municipal authority, the railway company occupied certain streets for the purpose granted and expended large sums of money in and about the construction of its electric lines; *held*, that the executive officers of the city could not, while such municipal consent remained unrevoked, justly deny the right of the street railway company to complete the work already begun, nor treat its employees as trespassers for prosecuting such work.

*Error to the District Court of Arapahoe County.*

THIS action was brought by The Denver Tramway Company (plaintiff below) on December 11, 1889, to enjoin the then mayor and chief of police of the city of Denver from interfering with its employees in the construction of a certain line of electric street railway in a street of the city of Denver.

It appears that the plaintiff company at and prior to the commencement of this action was a corporation formed by the consolidation of The Denver Electric and Cable Railway Company and The Denver Railway Association, corporations theretofore duly organized; and the city of Denver was a municipal corporation duly organized under special charter in the county of Arapahoe and state of Colorado.

It further appears that in December, 1889, the mayor and chief of police of the city of Denver caused the arrest of certain employees of the plaintiff company as trespassers, on the ground that they were engaged in constructing the electric lines of said company in said city without any authority or permission so to do. It was to prevent said municipal officers, their agents and subordinates, from interfering with the plaintiff company in the construction of its electric lines that the writ of injunction in this case was applied for. A temporary writ was granted; but upon final hearing the temporary writ was dissolved and the bill was dismissed. To reverse this judgment the plaintiff company prosecutes this writ of error.

ON REHEARING.

Mr. J. H. BROWN, Mr. L. S. DIXON, Mr. HUGH BUTLER and Mr. A. M. STEVENSON, for plaintiff in error.

Mr. JOHN F. SHAFROTH, Mr. G. W. WHITFORD, Mr. F. A. WILLIAMS and Mr..A. B. SEAMAN, for defendants in error.

Messrs. WOLCOTT & VAILE, *amici curiæ*.

PER CURIAM. In the opinion originally promulgated in this case it was said: " The particular relief sought by the action is rendered nugatory by the completion of the line of railway in controversy under subsequent state and municipal legislation." But in the preparation of that opinion it was assumed that counsel for plaintiff had conceded the power of defendants (the mayor and chief of police) to question the

validity of the authority under which the plaintiff company was constructing its electric lines. Such was our understanding of their oral arguments ; and upon this assumption it was said : "The sole question submitted for determination is whether the municipal authorities of the city of Denver were authorized to grant, in perpetuity, the privilege of constructing lines of street railway to be operated by electricity, at the time of the enactment of the ordinance."

By the petition and briefs for a rehearing counsel insisted that their oral arguments were misunderstood ; that they did not make, nor intend to make, any such concession. There being no written evidence of such concession, it could not be insisted on as against the denial of honorable counsel, and so a rehearing was granted.

Upon re-argument and re-examination our conclusion is that this court ought not to express an opinion as to the extent of the rights or privileges of the plaintiff company under Ordinance No. 3, of February 6, 1885, hereinafter quoted, except so far as may be necessary to determine whether the mayor and chief of police of the city were justified in interfering as they did with the employees of said company in the work of constructing its electric lines in December, 1889. Whether the ordinance granted to the plaintiff company a privilege in *perpetuity* is not material to the determination of the present controversy.

It is conceded by the written argument of counsel for defendants that " the matter now in controversy can in no way affect the liability of the plaintiff in error (The Tramway Company) or its right to the use and enjoyment of the streets for railway purposes, which it now occupies."

It is clear that there is not at the present time any actual living controversy as to the use of the streets already occupied by the plaintiff company for electric railway purposes. It will be time enough to determine whether the company has a valid grant of right of way (in perpetuity or otherwise) in streets not occupied, when such a claim is asserted and actually brought in issue.

The actual question now presented for determination is simply this : Were the employees of the plaintiff company in prosecuting the work of constructing the electric railway lines of said company through the streets of the city of Denver in December, 1889, guilty of such misconduct as to render them liable to be interfered with and treated as trespassers by the executive officers of the city ? The determination of this question involves the consideration of the laws of the state, and also the ordinances of said city as they existed prior to and at that date.

The constitution of Colorado has always contained the following provision :

" No street railroad shall be constructed within any city, town, or incorporated village, without the consent of the local authorities having the control of the street or highway proposed to be occupied by such street railroad." Art. 15, sec. 11.

The charter of the city of Denver as amended in 1883 provided, among other things, that the city council should have power by ordinance as follows, to wit :

" *Forty-first.* To permit and regulate the running of horse railway cars, or cars propelled by dummy engines, the laying down tracks for the same, the transportation of passengers thereon, and the form of rail to be used, upon the written consent of the owners of the land representing more than one half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes."

" *Forty-third.* To regulate and prohibit the use of locomotive engines and require railroad cars to be propelled by other power than that of steam." * * * Art. 2, sec. 17, Session Laws, 1883, pp. 64, 65.

While the foregoing charter provision was in force the city of Denver passed an ordinance containing the following :

" SECTION 1. That the right of way be, and the same is hereby granted to The Denver Electric and Cable Railway Company, its successors and assigns, to build, operate and maintain a single or double track railway, with the switches,

turnouts, side tracks and other appliances necessary for the operation of the same, in, along and across the streets of the city of Denver, said. railway to be operated by power transmitted by use of electricity or by cable." See Ordinance No. 3, adopted Feb. 6, 1885.

The charter of the city of Denver as amended in 1885 among other things authorized the city:

" To regulate the use of locomotive engines, to direct and control the location of *cable and other railroad tracks.*" Art. 2, sec. 20, Session Laws, 1885, p. 85.

Under the charter thus amended the city council passed an ordinance expressly recognizing Ordinance No. 3, of February 6, 1885, as valid, and providing for its enjoyment to a certain extent by the plaintiff company. See Ordinances 28 and 29, adopted May 2 and 3, 1888.

The charter of the city as amended in March, 1889, authorized the city council by ordinance:

" To permit and regulate the running of horse railway cars, or cars propelled by dummy engines, *cable or electricity*, the laying down tracks for the same, the transportation of passengers thereon, and the form and kind of rail to be used ; and to require railway companies using streets to lay their tracks at the official grade thereof, and to require them to bring such streets between the sidewalks to the official grade at their own expense ; and to compel them to pave the streets between their tracks, and for a distance of two feet upon each side of the same." Session Laws, 1889, p. 127.

Subsequent to the passage of this amendment the city council passed an ordinance (No. 27, adopted May 13, 1889), recognizing rights of way theretofore granted for the use and occupation of the streets and avenues of the city by street railway cars propelled by electricity as well as by horse power, dummy engines, cable and steam ; such ordinance provided for the issuance of permits by the city engineer to any company or corporation constructing such railways to excavate the streets for that purpose, and also contained specific regulations concerning the manner in which the

streets and avenues should be used and occupied for such purposes.

The agreed statement of facts shows that permits to excavate were issued by the city engineer to the plaintiff company in accordance with the requirements of Ordinance No. 27, of May, 1889, and that such permits were continued up to December 9, 1889, two days before the commencement of this action. The agreed statement of facts also shows the following:

"That during the month of May, A. D. 1889, and subsequent thereto, down to the time of the filing of the complaint in this action, the said plaintiff company was the only person or corporation which had been, as it claims by virtue of the ordinances above set forth, granted the right of way to use and occupy any of the streets and avenues of the city of Denver for the purpose of laying a track or tracks to be used in running cars propelled by electricity.

"That at the time of the passage of said Ordinance No. 27, A. D. 1889, there was no other ordinance in existence granting or purporting to grant to any other company than the said plaintiff the right to construct a street railroad to be operated by means of electricity."

It will be observed that all the foregoing statutes and ordinances, as well as the constitutional provision above quoted, were adopted before the action in this case was commenced.

It is true, the charter of 1883 did not specifically authorize the city of Denver to permit the operation of street railways by electricity. But, as we have seen, the various amendments to the charter of the city of Denver bear ample proof of the policy of our legislation in the matter of the location and operation of street railways. As by the progress of science, discovery and invention new kinds of motive power have been found useful for propelling street railway cars, so the charter has been amended expressly authorizing the use of cable power in 1885, and electric power in 1889 for that purpose, in addition to horse power and dummy engines theretofore authorized to be used.

It is true, that in advance of specific legislative authority, but nevertheless in pursuance of the general legislative policy of the state, the city council of Denver did pass an ordinance authorizing the company (of which the plaintiff company is the successor) to construct and operate street railway cars by electricity. It is also true, that by a charter provision subsequently enacted by the state legislature the city was expressly authorized to permit the running of railway cars by electricity; and this charter provision was shortly followed by a city ordinance expressly recognizing such grants of authority as had theretofore been given to use and occupy the streets of the city for the purpose of constructing and operating railway cars by electricity, as well as by other kinds of motive power.

Conceding that the city was without authority to adopt Ordinance No. 3, on February 6, 1885, it is nevertheless urged with much force and reason that the charter amendments of 1885 and 1889 as above stated and the ordinances adopted thereunder are to be regarded as curative statutes, thus legalizing the subsequent use of electric power by the plaintiff company. A standard author says:

" The rule in regard to curative statutes is that, if the thing omitted or failed to be done, and which constitutes the defect sought to be removed or made harmless, is something which the legislature might have dispensed with by a previous statute, it may do so by a subsequent one. If the irregularity consists in doing some act, or doing it in the mode which the legislature might have made immaterial by a prior law, it may do so by a subsequent one. On this principle the legislature may validate contracts made *ultra vires* by municipal corporations. It may thus ratify a contract of a municipal corporation for a public purpose." Sutherland on Statutory Construction, sec. 483.

In any event, it is clear that the mere executive officers of the city could not as late as December 11, 1889, be heard to question the plaintiff company's right to complete its electric lines already commenced.

By the agreed statement of facts in this case it appears that at and before the commencement of this suit the plaintiff company " had contracted for the construction and erection of the lines of double track electric street railway alleged in its complaint to the aggregate extent of about fifteen (15) miles, including the construction and erection of the same upon the streets mentioned in the complaint, and that in pursuance thereof plaintiff had incurred liabilities to the amount of over one hundred thousand ($100,000) dollars. That in addition to the construction of said two miles of double track electric street railway described in the complaint, said plaintiff had constructed about two miles of its lines of double track electric street railway (through almost the entire portion of its lines described in the complaint) situated in the west division of the city of Denver, excepting the planting of poles and the stringing of the wires thereon ; that the said poles are of the same class and character as other poles planted in the streets of said city of Denver used for the carrying of telephone, electric light and other wires, except as to height which was considered immaterial by the court according to its own statement ; that the wires along which the electricity is to be transmitted for the purpose of propelling the cars of plaintiff by electricity are to be strung at a height of from eighteen to twenty feet above the surface of the street, at an average height higher than that at which some of the arc electric lights are strung across the streets in said city of Denver."

Under such circumstances, it was manifestly unjust for the executive officers of the city to treat the plaintiff company or its employees as trespassers for proceeding with the work of constructing the electric line of the plaintiff company through the streets of the city already occupied for that purpose. The company had expended large sums of money in a great public enterprise ; it had done this upon the faith of the express action of the city authorities. The use of the streets for such purpose had received legislative sanction ; that is, such use had been made lawful when sup-

plemented by municipal consent. The city had recognized such use as lawful and had specifically provided the way and means whereby the plaintiff company should proceed with its work in constructing its electric lines, so that even though the original grant of authority may have been in excess of the chartered powers of the city, still the executive officers of the city could not, while such municipal consent remained unrevoked, justly deny the right of the plaintiff company to complete the work already begun, nor treat its employees as trespassers for prosecuting such work under the circumstances. Herman on Estoppel, p. 1363, sec. 1222; *Glasby v. Morris*, 18 N. J. Eq. 72; *Kreigh v. Chicago*, 86 Ill. 407; *Union Depot Co. v. St. Louis*, 8 Mo. App. 413; *Mutual Union Tel. Co. v. Chicago*, 16 Fed. Rep. 309; *Easton Pass. Ry. Co. v. Easton*, 133 Pa. St. 505; *People ex rel. Atty. Gen. v. Salomon*, 54 Ill. 39.

Considering all the circumstances of the case, our conclusion is that the suit of the plaintiff company should have been sustained *as against the mayor and chief of police*, the only defendants in the action. The former opinion is accordingly withdrawn, the judgment of affirmance is vacated, and the judgment of the district court is reversed and the cause remanded. In view of the rehearing, neither party shall recover costs of the other in this court.

*Reversed.*