FRANK A. BOSELEY, Appellant, *vs.* THE PARK DISTRICT OF OAK PARK *et al.* Appellees.

*Opinion filed October 24, 1916.*

PARKS—*a park district and library board cannot surrender to each other exclusive control of any part of a library building to be erected in park.* A park district organized under the act of 1895 and the board of a public library organized under the act to authorize cities to maintain free public libraries cannot, by an agreement for the erection of a library building on park property, surrender to each other exclusive control of any part of the building, notwithstanding such agreement may be beneficial and economical to the public, as the statute has expressly provided for separate management and control of public parks and public libraries.

APPEAL from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

EDWARD P. VAIL, JOHN LYLE VETTE, and DONALD P. VAIL, for appellant.

KERR & KERR, and PEARSON & HERRICK, (ROBERT J. KERR, and WALTER D. HERRICK, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Park District of Oak Park is a municipal corporation organized under the "act to provide for the organization of park districts and the transfer of submerged lands to those bordering on navigable bodies of water," approved June 24, 1895. (Hurd's Stat. 1916, p. 1880.) Its boundaries are co-terminous with those of the village of Oak Park. South Park, which is under its jurisdiction, comprises 6.1461 acres of land within the limits of the village. The public library of Oak Park was organized in 1902 under the provisions of sections 10 and 11 of the "act to authorize cities, incorporated towns and townships to establish and maintain free public libraries and reading rooms," approved March 7, 1872. (Hurd's Stat. 1916, p. 1637.) On April 7, 1916, the library board and the commissioners of the park district entered into a written agreement whereby the park district granted to the library board permission to erect a library building, in accordance with plans and specifications prepared therefor, in South Park, and agreed to pay toward the cost of construction $2850, the library board to let the contracts and assume responsibility for erecting the building. It was agreed that the park district should have the right to the exclusive use, occupation and control of the entire basement, except that part occupied by the heating plant and storage room for fuel, which should be jointly used, and that the library board should have the exclusive right to use, occupy and control the remainder of the building, but only for library purposes, together with such recreative uses as are appropriately connected therewith. Each of the parties was to be responsible for and pay for the care, operation and up-keep of that part of the building exclusively used and occupied by them, respectively, and the cost of fuel and the operation of the heating

plant, and any general repairs or other expenses that could not be properly classified as belonging to any definite portion of the building, was to be shared by the park district and library board in the same ratio as their contributions to the original cost of the building. The agreement was to continue in force forty years from its date and thereafter until terminated by mutual agreement or by one of the parties, either party having the right to terminate the agreement after the expiration of forty years by giving six months' written notice. Upon such termination the building, with all additions and improvements, should become the property of the park district, without payment therefor if such termination was by the act of the library board, but if by the action of the park district then the park district was to pay to the library board the value at that time of the part of the building for which the library board should have paid, such value to be determined by mutual agreement, if possible, otherwise by appraisal. If either the park district or the library board desired to make any additions or improvements, the consent of the other party should be first obtained. The building proposed to be erected was to be 73 feet long north and south, 47 feet wide and about 26 feet high, the south line to be about 150 feet north of the south line of South Park. The bids received for its construction amounted to about $11,500, of which it was agreed $2850 was the fair share of the park district.

Frank A. Boseley, on behalf of all other tax-payers of the village of Oak Park as well as himself, filed a bill in the circuit court of Cook county against the Park District of Oak Park and the directors comprising the library board, alleging the foregoing facts and also that he was a resident of the village of Oak Park and the owner of certain premises in which he resided, immediately adjoining the south line of South Park, and that the building proposed to be erected would interfere with and obstruct the view from his property; that the commissioners of the park district

had passed an ordinance appropriating the sum of $2850 for the purpose of paying the district's share of the cost of the building and included the amount in the tax levy ordinance; that the library board was about to enter into a contract for the erection of the building in accordance with the agreement and pay for its share of the construction out of the library fund, and the Park District of Oak Park was about to permit the erection of the building and its use in accordance with the agreement, to pay the sum of $2850 toward such cost, and to file a copy of the ordinance levying that sum on the property of the district with the county clerk of Cook county. The prayer of the bill is that the agreement between the park district and the library board, the respective resolutions authorizing it and the ordinances of the park district appropriating and levying the sum of $2850 be declared void; that the library board be restrained from carrying out the provisions of the agreement, from letting any contracts for the erection of the building or causing its erection, and from using any portion of the library fund to pay for the cost of the building; that the park district be restrained from permitting the erection of the building, from using any funds in its hands to pay for the cost of the building, from levying any taxes including any sum to be used for that purpose, and that the secretary of the board of commissioners of the park district be restrained from filing the copy of the levy ordinance with the county clerk of Cook county. A demurrer interposed by all of the defendants to the bill was sustained. The complainant having elected to stand by his bill it was dismissed for want of equity, and he has appealed.

The constitutionality of the act under which the library board was organized is involved and therefore the appeal was brought to this court, but the question need not be considered.

The appellant has stated and argued several objections to the agreement. One is, that the provision that the library

board is to have the exclusive right to use, occupy and control all of the building except a portion of the basement amounts to a surrender by the park commissioners of their control over park property, which is beyond their power to do. Since we regard this as a fatal objection to the agreement it will not be necessary to consider the other objections.

By section 11 of the act under which the park district was organized, it is provided that the commissioners "shall have full power to manage and control all the officers and property of the said district, and all parks, boulevards and driveways maintained by such park district, or committed to its care and custody. They may by ordinance regulate and restrain the use by the public or by individuals of any or all such parks, boulevards and driveways." By the terms of the agreement in question the park district released the full power of management and control of the property of the district so far as the proposed building is concerned and committed such management and control to another agency. By section 5 of the act under which the public library is organized it is provided that the directors "shall have the exclusive control of the expenditure of all moneys collected to the credit of the library fund, and of the construction of any library building, and of the supervision, care and custody of the grounds, rooms or buildings constructed, leased or set apart for that purpose." Since the power of each is exclusive, neither can exercise its authority over the library building jointly with the other. If the library building is a part of the park, then the park commissioners have full power in the management and control of it, though the statute provides that the library board shall have exclusive control of the library building and grounds. It is impossible for two independent bodies to have exclusive control of the same thing at the same time. In *Kreigh* v. *City of Chicago,* 86 Ill. 407, the city of Chicago by an ordinance attempted to confer upon the West Chicago Park Commissioners authority to improve, control and manage

certain streets. At that time there was no statutory authority for the park commissioners to acquire established streets or the city authorities to surrender control over them. It was held that the city, holding its streets in trust for the public, had no authority to alienate or divest itself of control over them. In determining this question it is not necessary to decide, and we have not considered, whether or not the use of a minute portion of a park for a public library is a use for park purposes. If the park district were proposing to erect, or permit to be erected, a library building to be under its management and control this question would be material, but it is not so where it is proposed to permit the erection of a building to be under the exclusive control of another authority.

It is argued that the consolidation of the buildings required by the park district and the library board, respectively, would be highly beneficial to the public and would effect a substantial saving of expense beside being beneficial to both the park and the library; that the space occupied by the building is comparatively trifling and will not interfere in any way with the use of the park for recreative purposes, and that the park is a desirable location for a library. These arguments cannot avail against the lack of power in the municipal corporation or the public officials to do the thing sought to be done. They may form a proper basis for an appeal to the legislature. Perhaps it would tend to secure greater efficiency and economy if all public parks and public libraries were placed under one management, but when the statute has expressly provided for separate management and control the courts are bound by the action of the legislature.

The decree of the circuit court will be reversed and the cause remanded, with directions to overrule the demurrer to the bill.    *Reversed and remanded, with directions.*