(No. 16786.—Decree affirmed.)
WILLIAM E. FURLONG, Appellant, *vs.* THE SOUTH PARK
COMMISSIONERS, Appellee.

*Opinion filed April 23, 1926.*

1. PARKS—*what is a proper improvement for park purposes.*
Park purposes are not confined to a tract of land with trees, grass
and seats, but as a park is a tract of land for the recreation and
amusement of the public, the construction and maintenance of a
building for a museum, art gallery, botanical or zoological garden
are a proper and legitimate improvement for park purposes.

2. SAME—*act of March 3, 1905, for issuing bonds, applies to
parks already improved.* The act of March 3, 1905, authorizing
any board of park commissioners "now having control of or hav-
ing selected any land or lands for the purpose of creating a public
park or parks" to issue and sell bonds "from time to time" for
the purpose of acquiring, improving and completing parks, applies
to lands theretofore in the control of or having been selected by
the commissioners, and is sufficient to authorize the South Park
Commissioners of the city of Chicago to issue bonds, pursuant to
an election, for repairing and remodeling the Fine Arts building in
Jackson Park, without regard to the act of May 11, 1905.

3. SAME—*there is an implied duty to improve and repair public
parks.* The duty to hold, manage and control land as a public park
necessarily implies the duty to improve and repair.

4. STATUTES—*courts will give effect to intention of legislature,
if possible.* Where it can be done effect should be given to the in-
tention of the legislature, and in construing statutes courts are not
confined to the literal meaning of the words used, but, when the
intention can be ascertained from the language, words may be re-
stricted and modified if the purpose of the statute is not violated.

APPEAL from the Superior Court of Cook county; the
Hon. CHARLES M. FOELL, Judge, presiding.

WILLIAM E. FURLONG, *pro se.*

COOKE, SULLIVAN & RICKS, DEFREES, BUCKINGHAM
& EATON, and ELMER J. SCHNACKENBERG, (GEORGE A.
COOKE, FRANCIS L. DAILY, WILLIAM J. CORRIGAN, and
MATHEW MILLS, of counsel,) for appellee.

Mr. Justice Farmer delivered the opinion of the court:

Appellant, a tax-payer, filed a bill in the superior court of Cook county to enjoin the South Park Commissioners, defendant, from letting any contract, issuing or selling bonds or expending public money for reconstruction of the Fine Arts Building so as to provide a convention hall, school of industrial arts or women's memorial building; also from issuing or selling bonds to pay for reconstruction of said building so as to make it suitable for an industrial museum or museum of architecture and sculpture, and from issuing or selling bonds to pay for the restoration of the exterior of said building. The bill alleges the town of South Chicago, town of Lake and town of Hyde Park form a district for park purposes known as South Park District; that Jackson Park is one of the public parks under the control of the South Park Commissioners; that there is in Jackson Park a building erected for temporary exhibition purposes as a part of the World's Columbian Exposition, held in said park in 1893; that the building was erected by a private corporation or association by authority of law; that at the conclusion of the exposition said building was not razed or demolished and is now in a dilapidated condition; that on April 16, 1924, the South Park Commissioners adopted a resolution that it was necessary to make suitable provision for the restoration of the Fine Arts Building to make it available for the use of the public to the utmost extent of which it is capable, which resolution is set out in full, and recites the exterior should be completely restored and the interior reconstructed in such manner as to preserve the building and render it suitable for the purposes designated in the resolution and such other uses advantageous to the public interest as shall be practicable; that May 2, 1924, the South Park Commissioners adopted an ordinance referring to the previous resolution, which recited the estimate of the cost of the work was $5,000,000; that the general revenues of the commis-

sioners were not sufficient to pay the cost, and the resolution ordered that the proposition of issuing $5,000,000 of bonds to procure money to pay the cost be submitted to the legal voters of the towns of South Chicago, Lake and Hyde Park at a special election to be held in conjunction with a judicial election on June 2, 1924. The bill sets out the form of the ballot, which contains the statement that the bonds were to secure money to pay for the restoration of the exterior and reconstruction of the interior of the Fine Arts Building, in Jackson Park, so as to preserve it and render the interior suitable for convention and assembly halls, an industrial museum, a school of industrial arts, a women's memorial hall, athletic, art and social centers, museum of architecture and sculpture, "and such other uses advantageous to the public interest as shall be practicable;" that the proposition carried by a majority of the votes cast at the election, and the commissioners immediately advertised for bids and were about to let contracts for the work; that they had never been granted, by law, power or authority to expend public money to provide a convention hall, a school of industrial arts or a women's memorial hall, and that the contemplated expenditure for any or all of said purposes from public money is illegal. The bill concedes the commissioners have lawful power from current revenues to erect, reconstruct and maintain an industrial museum and a museum of architecture and sculpture, but avers the commissioners have never been granted power to issue bonds to provide such museum, and the proposed bond issue for museum purposes is illegal; that the commissioners had never been granted, by law, power to issue bonds for the purpose of providing a convention hall, a school of industrial arts or a women's memorial hall, and the proposed issue of bonds for such purposes is illegal; that the commissioners have never been granted, by law, power to issue and sell bonds to pay for the restoration of the exterior of the Fine Arts Building and an issue of

bonds for that purpose is illegal, and that unless the issue and sale of bonds and expenditure of their proceeds are restrained it will result in an increase of the tax burden upon complainant and other tax-payers in the South Park District. Then follows the prayer for relief. The South Park Commissioners demurred to the bill. The court sustained the demurrer and entered a decree dismissing the bill. From that decree appellant has prosecuted this appeal.

The bill alleges the building was erected in Jackson Park by authority of law. The act authorizing the use of Jackson Park for exposition purposes gave the South Park Commissioners authority to permit the park's use for exposition purposes upon such terms and conditions as might be agreed upon between the commissioners and the exposition authorities. There is no allegation in the bill that the Fine Arts Building is not the property of the park authorities, and we are justified in assuming it was acquired by them after the exposition closed. Appellee had the right and power to maintain and improve the property for legitimate purposes. In the resolution proposing the bond issue and on the ballot used at the election it was stated the purpose of the bond issue was to repair and improve the building so as to make it suitable for a number of purposes mentioned and such other uses advantageous to the public interest as shall seem practicable. Appellee was vested by law with authority to manage, control, maintain and regulate the park for the benefit, health and recreation of the public. The park is for the public benefit and not for private uses, and the improvement and maintenance of its buildings for the public use and benefit were a necessary part of the authority and duty of the commissioners. The resolution does not state that the building is to be exclusively devoted to the uses mentioned, but that it is proposed to make it suitable for those and other uses advantageous to the public. A court cannot say as a matter of law, even if any of the mentioned purposes were be-

yond the powers of the commissioners, that they are proposing to expend the public's money for the purpose of so altering the building as to devote it to unlawful purposes. Park purposes are not confined to a tract of land with trees, grass and seats, but mean a tract of land ornamented and improved as a place of resort for the public, for recreation and amusement of the public. The construction and maintenance of a building for museums, art galleries, botanical and zoological gardens, and many other purposes, for the public benefit, are recognized as legitimate purposes. (*Laird* v. *Pittsburgh,* 205 Pa. St. 1 ; *Spires* v. *City of Los Angeles,* 150 Cal. 64, 87 Pac. 1026; *Riggs* v. *Board of Education of Detroit,* 27 Mich. 262; *Huff* v. *Macon,* 117 Ga. 428, 43 S. E. 708; 3 Dillon on Mun. Corp. sec. 1096.) We are not sufficiently advised to say that the bond issue should be enjoined because it is to raise money to spend for unauthorized purposes.

Appellant contends the act of March 3, 1905, under authority of which appellee proposed to issue the bonds, applies only to cases where at the time of its passage raw lands not developed or improved were held or had been selected for the purpose of creating public parks thereon and did not apply to Jackson Park, which was then in an improved state. It is argued that the language of the act and the emergency clause show the legislature had in mind only certain acquisitions of land and improvements which were urgently necessary. It is further argued that the act of May 11, 1905, passed at the same session, supports that construction of the act of March 3. The act of March 3, so far as necessary to the decision, is as follows:

"An act to enable park commissioners to issue bonds for the purpose of acquiring and improving public parks, and to provide for the payment of such bonds.

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That every board of public park commissioners now having control of

or having selected any land or lands for the purpose of creating a public park or parks thereon and which said board is unable to pay for or improve out of its general revenue, may from time to time, in its discretion, issue and sell, in addition to the bonds now authorized by law to be issued and sold by said board, interest-bearing bonds for the purpose of obtaining such funds as it may deem necessary for acquiring, improving and completing said parks: *Provided,* no bond shall be issued under this act contrary to the provisions of section 12, article 9, of the constitution of this State. * * *

"Sec. 2. Whereas, there is a necessity for the immediate acquisition of the parks and construction of the improvements contemplated in this act, therefore an emergency exists, and this act shall take effect and be in force from and after its passage."

The act requires the proposition to issue bonds to be submitted to a vote of the legal voters of the park district and that it receive a majority of the votes cast on the proposition.

It is well settled that when it can be done effect should be given to the intention of the legislature, and in construing statutes courts are not confined to the literal meaning of words used, but when the intention can be ascertained from the language, words may be altered, modified or restricted which do not violate the clear purpose of the statute. *Cruse* v. *Aden,* 127 Ill. 231; *People* v. *English,* 139 id. 622; *People* v. *City of Chicago,* 152 id. 546; *Krome* v. *Halbert,* 263 id. 172; *Uphoff* v. *Industrial Board,* 271 id. 312.

The act of 1869 creating appellee authorized and required it to select lands now constituting Jackson Park, which were required to be held, managed and controlled by the commissioners and their successors as a public park. The language of the act of March 3 that any board of park commissioners "now having control of or having selected any land or lands for the purpose of creating a public park

or parks," may well be construed to have meant and intended lands theretofore in the control of or having been selected by the commissioners.   Certainly the duty to hold, manage and control lands as a public park necessarily implies the duty to improve and repair.   (*People* v. *Clark,* 296 Ill. 46.)   The title of the act of March 3 indicates it was intended to apply in case of lands acquired by the commissioners after its passage as well as to lands acquired or in control of the commissioners before its passage.   Its title is, "An act to enable park commissioners to issue bonds for the purpose of acquiring and improving public parks, and to provide for the payment of such bonds," and indicates that it was intended to be broad enough to authorize improvement of the lands without regard to the time they were selected.

No significance can be attached to the language of the emergency clause as an aid to the construction of the act itself.   It is well known that many acts have been passed during a number of years containing emergency clauses which were attached to the act for the sole purpose of expediting its going into effect, whereas, in fact, there was no emergency.   (*Graham* v. *Dye,* 308 Ill. 283.)   We think the inference warranted that the reason for the emergency clause was the desire of appellee to proceed with the issue and sale of bonds and the improvements proposed without being compelled to wait until July 1, when the act would have become effective without the emergency clause.

The act of March 3 authorized the park commissioners, "from time to time," to issue and sell bonds for the purpose of obtaining funds necessary for acquiring, improving and completing parks.   It is not disputed that immediately after the passage of the act of March 3, under its authority the commissioners issued and sold $2,500,000 in bonds for the improvement of public parks and squares under their control, and in 1920 another bond issue was made under an ordinance referring to the act of March 3

320—33

and three other acts, submitting the proposition of issuing the bonds to the voters; and in 1923, under authority of the act of March 3, jointly with another act, there was another bond issue. It is said in appellee's brief, and is not disputed, that the total of those two bond issues was $15,000,000, and that over $8,000,000 of these bonds are still outstanding. We mention those facts not as determinative of the question here involved but as worthy of some notice.

The act of May 11 was for the purpose of raising funds for the completion, improvement and maintenance of the parks and boulevards now under the management and control of such board of park commissioners or which may hereafter be acquired by it. That act, while in its terms general, we think was intended only for the benefit of the West Park Commissioners. May 18, 1901, an act was passed intended to authorize the West Park Commissioners to issue bonds for the purposes therein stated, but that act was held invalid in *Pettibone* v. *West Chicago Park Comrs.* 215 Ill. 304. That case was decided in April, 1905, and another act relating to the same subject as the act of 1901 was passed and approved May 18, 1905. That act and the act of May 11 must have been pending in the legislature at the same time. The act of March 3 had been passed and approved in March previous to the acts of May 11 and 18, and it must be assumed the legislature believed and intended all of them were necessary to meet existing needs and that no two of them were intended to apply to the same particular situation. The West Park Commissioners were about to issue and sell by authority of the act of May 11 $2,000,000 of bonds and by authority of the act of May 18 $1,000,000. Tax-payers filed bills to enjoin the issue and sale of the bonds on the ground that both bills were unconstitutional. Both acts were sustained in *Kucera* v. *West Chicago Park Comrs.* 221 Ill. 488. In the opinion the court points out the distinction between

those acts and the one considered in the *Pettibone case.* The act of May 11, we think, cannot control in the construction of the act of March 3.

Both parties have in their briefs referred at great length to many other acts of the legislature affecting parks and to some extent the history of the creation and improvement of parks, but we do not regard the acts as of controlling effect or very material aid in arriving at the meaning and intent of the act of March 3.

The decree of the superior court is affirmed.

*Decree affirmed.*