Arthur P. Hagerman and Paul Maton, Trading as Hagerman, Weiner & Maton, Appellees, v. South Park Commissioners, Appellant.

Gen. No. 37,072.

34

Opinion filed December 19, 1934.

GEORGE E. GORMAN, of Chicago, for appellant.

· SYLVAN S. ROSENBAUM, of Chicago, for appellees; W. F. STRUCKMANN and LEO L. WEIL, both of Chicago, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is a first class contract action in the municipal court of Chicago, brought by the plaintiffs against the defendant to recover moneys paid under the terms of a contract, in which action the court entered a judgment against the defendant for the sum of $12,854.95 and costs of court upon a finding of the court for the plaintiffs upon the statement of claim and affidavit attached thereto. Upon motion of the plaintiffs the affidavit of merits of defendant was stricken from the files as constituting no defense, either in part or in whole, to the statement of claim, and the defendant electing to stand by its affidavit of merits, the court entered judgment for the amount above indicated, and this is defendant's appeal from the judgment to this court.

The statement of claim sets forth that on the 14th day of March, 1929, the defendant advertised for bids for the exclusive privilege of operating refreshment concessions in the smaller parks under control of said defendant; that plaintiffs were successful bidders and entered into a contract with the defendant, on May 22, 1929, of which certain specifications attached to this contract were a part. The contract also provided for a bond conditioned for the performance of the provisions of the contract; that the plaintiffs were to pay to the defendant the sum of $12,700 in 20 equal payments of $635 each, on the first days of June, July,

August and September in the years 1929, 1930, 1931, 1932 and 1933; that in compliance with the provisions of said contract, the plaintiffs paid $3,810; that the indemnity bond required cost the plaintiffs $500; that under and by virtue of the contract, the plaintiffs were forced to and did expend in and about the improvement, painting and repair of certain buildings occupied by them the sum of $631.19; that as a part of said contract the plaintiffs were required to and did purchase from the defendant for the sum of $12,854.95 five refreshment stands, each in a different small park, and also checking boxes and coat racks in four of the skating houses which sum the plaintiffs paid to the defendant, and thereafter entered into the possession of said property; that the defendant is a body politic and corporate; that its powers are conferred by the statute of the State of Illinois; that nowhere has it acquired the right, nor did it at the time of the solicitation of bids for or the making of the contract have the right to sell buildings to the plaintiffs as it knew or should have known; that such sale was a sale of public buildings located on property belonging to the State of Illinois, which was not made by any order of court nor by virtue of any legal process, nor by the authority of any power, right, privilege or duty conferred upon the South Park Commissioners; that such sale, being contrary to and in excess of any express, implied, or delegated powers, was and is wholly void; that the alleged purchase price of said buildings was neither the rental, profit, reservation, share or profit, or emolument attendant upon the said contract in the execution thereof, or in the sale and dispensing of foodstuffs, confectionery, or other edible articles contemplated in said contract and specifications; that the said sum of money paid by the plaintiffs to the defendant was received by the defendant for the use of the plaintiffs, and that there is now due to the plaintiffs by reason thereof the sum of $12,854.95, with interest thereon

from the 28th day of May, A. D. 1929, until the date of judgment, at five per cent per annum; that the property in question had been purchased by the defendant from the previous concessionaire, who had acquired the same under a contract identical with the contract and specifications of the plaintiffs, and that the defendant had purchased or possessed a right to purchase said property from said previous concessionaire for the sum of $12,854.95, less 10 per cent per annum for the term of the previous concessionaire's contract; that although often requested, the defendant has refused and still does refuse to pay any part thereof to the plaintiffs, wherefore the plaintiffs sue for these various sums, they being set out in detail in the statement of claim, and there being attached to the said statement of claim an affidavit of plaintiffs' claim in due and regular form; and then, as a part of the statement of claim, a copy of the specifications referred to is set out in *haec verba*.

That particular provision of the contract which plaintiffs claim is void, as set forth in the statement of claim, and in the specifications, is in exact words as follows:

"A number of small summer refreshment stands or buildings together with the checking boxes and coat racks in the skating houses at Sherman, Ogden, McKinley and Hamilton Parks are the property of the present concessionaire from whom the Commissioners will purchase this property for the sum of Twelve Thousand, eight hundred fifty-four dollars and ninety-five cents ($12,854.95) in accordance with the terms of his contract.

"The new concessionaire will be required to purchase from the Commissioners for his use this concessionaire-owned property at the same price for which the Commissioners bought it from the present concessionaire, namely, twelve thousand, eight hundred fifty-four dollars and ninety-five cents ($12,854.95).

This property will in turn be purchased from the new concessionaire at the expiration of his contract at the above cost to him less a depreciation of ten per cent (10%) per annum dated from the first of the month following the award of contract.

"The bidder whose proposal for the concession is accepted, shall therefore within five (5) days after being notified of such acceptance furnish to the South Park Commissioners a certified check payable to them for the sum of twelve thousand, eight hundred fifty-four dollars and ninety-five cents ($12,854.95) as explained in detail above to cover the purchase by him of the concessionaire-owned property.

"This concessionaire-owned property consists of the following:

"Building at Location 1—Sherman Park, refreshment stand.

"Building at Location 3—Ogden Park, refreshment stand.

"Building at Location 5—McKinley Park, refreshment stand.

"Building at Location 7—Hamilton Park, refreshment stand.

"Building at Location 9—Calumet Park, refreshment stand.

"Checking boxes and coat racks in the skating houses at Sherman, Ogden, McKinley and Hamilton Parks."

The defendant moved to strike the statement of claim from the files as insufficient in law, which motion was overruled, and thereupon the defendant filed an affidavit of merits, claiming, among other things, said contract to be valid and binding, setting forth the nature of the refreshment stands and that they were neither by defendant nor other persons, at any time, treated as realty, but in the nature of trades fixtures, and personal property; that they were maintained for the public use, benefit, and recreation of all persons

who might lawfully go to said parks and desire refreshments; that the contract in question, while nominally a sale, was in fact merely a right to temporarily use the refreshment stands, with a compensation to be paid by the plaintiffs for the use and depreciation thereof, as evidenced by the fact that at the end of the term they were not to be removed, but an adjustment was to be made with the plaintiffs with respect thereto; that calling the matter a sale did not make it a sale, either in law or in fact; that defendant was authorized to purchase such personal property for use in the parks as was necessary or convenient for the general public, provided it was adapted to park purposes, and to sell the same when it appeared to the defendant to be desirable so to do from the standpoint of the public and the taxpayers; that the only occasion when it was necessary for the defendant to obtain other authority than its own for a sale was in the case of land, which was not the fact under the contract; that the plaintiffs, having enjoyed the benefit of said contract, are now estopped to make the claim set forth in this suit; that the statement of claim is insufficient in law to justify a recovery or judgment in their favor, which affidavit of merits was on motion of plaintiffs stricken from the files as insufficient to constitute any defense to the claim of plaintiffs either in whole or in part.

The question is whether the contract entered into by the parties in this cause is void for want of power conferred by law upon the defendant, and whether the plaintiffs having paid money to the defendant under a void contract can therefore maintain an action against the defendant to recover the money so paid in an action for money had and received.

The South Park Commissioners are vested by law with authority to manage, control, maintain and regulate the parks for the benefit, health and recreation of the public. Section 13 of the Statutes of February 24,

1869, provides, in part, for the powers and duties of the South Park Commissioners, as follows:

"Sec. 13. Power to govern. The said board shall have full and exclusive power to govern, manage and direct said park; to lay out and regulate the same; to pass ordinances for the regulation and government thereof; to appoint such engineers, surveyors, clerks, and other officers, including a police force, as may be necessary; to define and prescribe their respective duties and authority; fix the amount of their compensation; and, generally, in regard to said park, they shall possess all the power and authority now by law conferred upon, or possessed by, the Common Council of the City of Chicago, in respect to the public squares and places in said city; and it shall be lawful for them to commence the improvement of said park as soon as they have obtained one hundred acres of the premises herein described."

While it is true that a corporation can only exercise such powers as are granted, it may also exercise such further powers incidental to the general powers of the corporation. Therefore, a contract of a corporation which is outside the object of its creation as defined in the law of its organization, which powers were granted by the legislature, is void, and of course the contract is of no legal effect. But where the power exercised by a corporation is incidental and used to carry out the general purpose of a corporation and is within the scope of such general authority conferred by the legislature, the corporation, as well as persons contracting with it may be estopped to deny that it has complied with the legal formalities prerequisite to its existence or to its actions.

The plaintiffs contend that the defendant has only such power and authority conferred by the act approved and in force February 24, 1869, together with such power as is possessed by the common council of

the City of Chicago in respect to the public squares and places in the city, and in the exercise of power, is limited to the time the power is granted. The plaintiffs further point to the various acts subsequently passed and in force, and contend that there is no power granted by any statute, public or private, that confers power upon the South Park Commissioners to enter into the contract upon the terms provided for in the contract in question. While a grant of power to a municipal or quasi-corporation is to be strictly construed, still the court will not so strictly construe the grant of power as to destroy the purpose for which the grant was passed by the legislative body.

The rule in support of the position we have indicated is well settled in the opinion of the Supreme Court in the case of *National Home Building & Loan Ass'n v. Home Savings Bank,* 181 Ill. 35.

The contract in question may not have strictly complied with the legal formalities; still the purpose of such an instrument is best stated by the Supreme Court in the case of *Furlong v. South Park Com'rs,* 320 Ill. 507, a somewhat analogous case, where the court said:

''Appellee was vested by law with authority to manage, control, maintain and regulate the park for the benefit, health and recreation of the public. . . . Park purposes are not confined to a tract of land with trees, grass and seats, but mean a tract of land ornamented and improved as a place of resort for the public, for recreation and amusement of the public. The construction and maintenance of a building for museums, art galleries, botanical and zoological gardens, and many other purposes, for the public benefit, are recognized as legitimate purposes.''

What the court said in its opinion applies and is applicable to the contract between the parties in the instant case. The agency employed by the defendant was to carry out a proper activity of the defendant as

a municipal entity. It is not material whether the contract in question is to be construed to be a sale, lease, or a license. The real purpose of the contract was to benefit the public. The plaintiffs in this case enjoyed the benefit of the contract undisturbed, and so far as we are able to determine, were still in possession at the time the lawsuit was instituted, and so in possession of the various stands located at the places provided for by the contract, and as a party thereto received the benefits provided for in the contract.

The contract does not by any of its provisions convey to the plaintiffs any interest in the real property in the park district.

The plaintiffs contend that the statute requiring certain legal formalities to be complied with in the exercise of a right to enter into a contract, must be performed by the defendant, such as the passing of an ordinance of the park commissioners which authorizes the publication and sale of personal property by a three-fourths vote of the members of the commission. The answer to this contention is that the record does not disclose that the legal formalities were not complied with, and there is a presumption in the performance of official duties that such formalities were properly performed at the time the contract was entered into by the parties. The facts are that the plaintiffs did not object upon the above ground, but went into possession of the property under the provisions of the contract, and while in possession retained the benefits derived from such possession, and plaintiffs are estopped at this time to raise this question.

The defendant by its contract with the plaintiffs permitted plaintiffs to use the refreshment stands, or the buildings so-called, and for the use thereof paid to the defendant $12,854.95 for the period of the contract, and under its terms the defendant at the end of the period was to deduct 10 per cent for depreciation for each of the five years used. It is significant that the

plaintiffs are not granted authority to sell the refreshment stands at the expiration of the term of the contract, but are to receive the amount advanced, less the amount of 50 per cent depreciation for the full period, and the plaintiffs are limited in the use by the contract, which would indicate that the plaintiffs' possession of the property was limited, and in a true sense, not a sale of the personal property to the plaintiffs, as contended for by the plaintiffs.

For the reasons stated in the opinion, the trial court erred in striking the defendant's affidavit of merits, and the judgment will be reversed and the cause remanded with directions that the court enter such orders as may be consistent with the views expressed in this opinion.

*Reversed and remanded with directions.*

WILSON and HALL, JJ., concur.