D. SCOTT CHARLTON *et al.*, Plaintiffs-Appellants, *v.* CHAMPAIGN PARK DISTRICT, Defendant-Appellee.—(RAINBOW BEND-CHAMPAIGN, LTD., Intervening Defendant-Appellee.)

Fourth District   No. 4—82—0210

Opinion filed October 21, 1982.—Modified on denial of rehearing December 29, 1982.

Paul C. Hendren, of Williamson, Miller & Hendren, of Champaign, for appellants.

Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellee Champaign Park District.

Gene A. Petersen, of Davis & Morgan, of Peoria, for appellee Rainbow Bend-Champaign, Ltd.

Harris W. Fawell and Heidi H. Katz, both of Fawell, James and Brooks, of Naperville, for *amicus curiae*.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

The plaintiffs in this case are taxpayers residing within the boundaries of defendant, Champaign Park District (Park District). On March 5, 1982, they filed a complaint in the circuit court of Champaign County seeking a declaratory judgment declaring to be invalid a purported agreement between defendant and Group VI, Ltd., assignor of all its rights and obligations under the agreement to intervenor-defendant, Rainbow Bend-Champaign, Ltd. (Rainbow Bend). The agreement provided for Group VI to construct, own, operate and charge admission to patrons using a waterslide to be built by Group VI at Centennial Park in Champaign, a public park owned and operated by the Park District. Plaintiffs also sought preliminary and permanent injunctions prohibiting construction of the waterslide and its operation under the terms of the agreement.

The circuit court ordered a preliminary injunction to issue on March 8, 1982. Rainbow Bend was allowed to intervene as assignee of Group VI. On March 18, 1982, after a hearing on the merits, the circuit court dissolved the interlocutory judgment and denied all relief requested by plaintiffs. Plaintiffs appeal, asserting the Park District acted beyond its authority in attempting to contract with Rainbow Bend because (1) the Park District has only the powers granted to it by statute and no power to enter into a contract of this nature has been so granted, (2) the purported contract violates the statutory mandate that the Park District control its property, and (3) in purporting to enter into the contract, the Park District violated a statutory requirement that it advertise for bids before entering into a contract of this nature. We affirm.

The evidence was mostly undisputed and need not be recited at length here. Pertinent details will be mentioned in discussion of the legal points raised. The document in dispute was entitled "Concession Agreement." After the assignment and an amendment made before the hearing on the merits, the agreement provided for Rainbow Bend to build, own and operate the waterslide and related concessions, collecting the admission and concession charges and remitting 10% thereof to the Park District. The size of the area for the project was

estimated to be less than 1½ acres. The length of the agreement was stated to be slightly over five years with Rainbow Bend given options to renew for five three-year periods. The agreement also provided that Rainbow Bend might terminate it on the first of any calendar year, upon proper notice, if it could "establish to the reasonable satisfaction of the Park District that the continued operation of the Water Slide is no longer economically feasibile."

The parties agree that park districts, like other non-home-rule units of local government, can only exercise those powers expressly granted to them by statute or necessarily implied from such a grant. (*People ex rel. Nelson v. Beu* (1949), 403 Ill. 232, 85 N.E.2d 829.) The Park District Code (Ill. Rev. Stat. 1979, ch. 105, par. 1—1 *et seq.*) does not expressly grant to park districts the power to enter into leases, licenses, or concessions with a private entity for the operation on district property of a business of profit to the private party. To support the holding of the trial court that the Park District had power to enter into the "Concession Agreement," the Park District and Rainbow Bend rely upon the implications of several express statutory grants of authority to park districts. Section 8—10 of the Code (Ill. Rev. Stat. 1979, ch. 105, par. 8—10) gives park districts power to establish and maintain various recreational programs and facilities including swimming pools and states that the grant of power is not a limitation on the power to provide other recreational facilities. Section 8—1(a) of the Code (Ill. Rev. Stat. 1979, ch. 105, par. 8—1(a)) permits park districts "to contract in furtherance of any of its corporate purposes."

Plaintiffs concede the Park District has power under section 8—10 to itself build and operate the waterslide as a recreational facility and to charge admission for its use. Plaintiffs dispute that the Park District has power to contract with others to operate the slide and receive admission charge for it. No Illinois cases are directly in point. However, plaintiffs have been unable to present any case from any jurisdiction holding that legislation similar to that here has been insufficient to authorize the granting of concessions or licenses for similar activity by any municipality. We conclude the cases cited by parties-defendant here are sufficient to support their contention that the power of the Park District to enter into the agreement here was necessarily implied from the park district act.

We consider *People ex rel. Hoyne v. Chicago Motor Bus Co.* (1920), 295 Ill. 486, 129 N.E. 114, to be the most significant case cited. In a *quo warranto* proceeding, the supreme court upheld the power of a park district, acting through its commissioners, to license, for a fee, a corporation to operate buses on and through the streets

within the park lands. The supreme court deemed the grant to the district to generally regulate the park land and the specific grant to provide for streets and alleys to be sufficient to imply the power to issue such licenses.

The case of *Hagerman v. South Park Commissioners* (1934), 278 Ill. App. 33, is also helpful. An action was brought by one who had obtained a contract for concessions from a park district seeking to have money paid by him on the contract returned. The contract provided the district would purchase concession stands, which were in the park, from the present concession holders and resell them to the plaintiff at the same price. In seeking to rescind the contract, the plaintiff claimed the park commissioners lacked authority to enter into a contract for concessions. The appellate court affirmed a judgment for the defendants ruling that although the commissioners' powers were to be strictly construed, "[t]he agency employed by the defendant was to carry out a proper activity of the defendant as a municipal entity." 278 Ill. App. 33, 40-41.

The *Hagerman* court drew analogy to the case of *Furlong v. South Park Commissioners* (1926), 320 Ill. 507, 151 N.E. 510, where the court upheld the power of the commissioners to build museums. The *Hagerman* court stated that "whether the contract in question [was] to be construed to be a sale, lease, or a license" was immaterial. (278 Ill. App. 33, 41.) However, the *Hagerman* court also deemed significant the fact that although attacking the validity of the contract, the plaintiff had enjoyed benefits of the contract and remained in possession of the stands.

Neither *Kurek v. Pleasure Driveway & Park District* (7th Cir. 1977), 557 F.2d 580, nor *People ex rel. Carroll v. Village of Lakewood* (1938), 368 Ill. 209, 13 N.E.2d 275, cited by both parties-defendant, pass directly upon the power of the Park District to enter into concession agreements. Dictum in *Kurek* is marred by an apparent misapprehension of that court that section 8—16 of the Park District Code (Ill. Rev. Stat. 1979, ch. 105, par. 8—16) expressly authorizes park districts to lease its real estate to others.

■ We need not hold that a park district has even implied power to lease its real estate in order to uphold the instant agreement because we deem the agreement to merely grant a license to Rainbow Bend. A license differs from a lease in that the former merely gives the licensee a right to enter upon the licensor's land and use it for a specific purpose. The licensor still has legal possession of and control over the premises. In a lease, the lessee possesses an estate and controls the property against the lessor and all the world. (*Mueller v.*

*Keller* (1960), 18 Ill. 2d 334, 164 N.E.2d 28; *Jackson Park Yacht Club v. Department of Local Government Affairs* (1981), 93 Ill. App. 3d 542, 417 N.E.2d 1039; *In re Application of Rosewell* (1979), 69 Ill. App. 3d 996, 387 N.E.2d 866.) Whether the agreement entered into by the parties is a license or a lease is partly a question of the intent of the parties. *Jackson Park Yacht Club.*

The case of *In re Application of Rosewell* (1979), 69 Ill. App. 3d 996, 387 N.E.2d 866, is closely on point. In *Rosewell*, the sole issue before the court was whether agreements between the city of Chicago and private companies for the operation of parking facilities were leases subject to real estate taxation. The agreements between the city and the private operators transferred possession of the garages to the operators. The garage operators had to have prior written approval of the city before signs could be posted or before commercial vehicles could be allowed to park. The agreement set out a schedule of parking fees and required the garages to be open 24 hours per day, seven days per week. The city also had the power to approve the design and color of the uniforms worn by the operator's employees.

The trial court had held that the agreement was a lease because the operators had exclusive possession of the premises. The appellate court disagreed, holding that "an agreement which merely entitles one party to use property subject to the management and control of the other party does not constitute a lease, but rather grants only a license [citations]." (69 Ill. App. 3d 996, 1001-02, 387 N.E.2d 866, 870.) The appellate court found that the agreements were not intended to transfer possession of the real estate, coupled with sufficient control necessary to create a leasehold interest.

The concession agreement as amended grants the power to "construct, operate and manage" the waterslide and to collect the proceeds. As in *Rosewell* the agreement also states that possession is given to the licensee. However, as we subsequently explain, the documents give no indication the Park District has abdicated all of its important rights incident to possession.

The foregoing cases indicate the argument in favor of a park district having implied power to enter into an agreement of the nature here is strongest when the function to be performed by the other party is *incidental* to the performance by the district of its authorized activities and when sufficient control of the premises is retained by the park district to make the agreement a license rather than a lease. Plaintiffs cite an additional reason why the retention of control in the park district is of importance. Section 8—1(f) of the Park District Code (Ill. Rev. Stat. 1979, ch. 105, par. 8—1(f)) states park districts

have power to "manage and control all officers and property of such districts." Plaintiffs contend that the precedent of *Boseley v. Park District* (1916), 275 Ill. 92, 113 N.E. 984, requires a determination that the instant agreement is beyond the power of the Park District because it has relinquished too much control of the premises.

In *Boseley*, a contract between a park district and a local library authority called for the building of a library on park district property, with the two groups each occupying and managing portions of the building, was held to be invalid. The court noted that both entities were given statutory power to manage their property and joint management would be inconsistent with the statutory grant. Plaintiffs maintain that similarly the grant of power to the Park District to manage its property precludes any sharing of that function with Rainbow Bend. However, we note that in *Boseley* the library authority had "the exclusive right to use, occupy and control all of the building except a portion of the basement." (275 Ill. 92, 96, 113 N.E. 984, 985.) Here, greater control was retained by the Park District.

As the facts bearing upon whether the operation of the waterslide were incidental to other park functions and those concerning the degree of control remaining in the Park District over the operation of the slide are somewhat related, we discuss them together.

The project was expected to cost about $625,000 to Rainbow Bend and was to occupy about 1½ acres of Centennial Park. The two-flumed slide was expected to extend 40 feet into the air. Centennial Park contains 78.5 acres and is only one of 34 parks containing 458 acres in all which are operated by the Park District. In addition to the waterslide, Centennial Park is improved with a 24-foot high sledding hill, lighted baseball and softball diamonds each with substantial spectator seats, two Little League baseball diamonds, a building housing a gymnasium and a meeting room, eight lighted tennis courts, a 2½-acre stocked animal farm and a swimming and diving facility near the waterslide which was licensed to serve 1500 people. The Park District anticipated revenues of from $15,000 to $25,000 as their share of the waterslide and concession revenues and expected the presence of the waterslide to increase swimming pool revenues by about $10,000.

Plaintiffs cite as instances of an excessive grant of control to Rainbow Bend the following: (1) the "Termination or Expiration Clause" which authorizes Rainbow Bend to terminate upon a showing of economic unfeasibility; (2) the possibility that the ownership and control of Rainbow Bend might change; (3) the ability of Rainbow Bend under the agreement as amended to charge less than established rates at certain times when reasonable to do so; (4) the provi-

sion of the agreement as amended for Rainbow Bend, with Park District approval, to operate the slide during the off season without a provision whereby the Park District can require Rainbow Bend to do so; (5) provision of foregoing which prohibits other concession stands within 1,000 feet of Rainbow Bend's concession stand; and (6) lack of provision in agreement as amended for proper input.

We do not consider the "Termination or Expiration Clause" to constitute a divestiture by the Park District of control of its property for a successful exercise of that provision by Rainbow Bend would return complete control of the property to the Park District. Likewise the control by the Park District of property would not change if ownership of Rainbow Bend changed. The powers of Rainbow Bend might be exercised by different people, but the powers of the Park District would remain the same. The effect of the provisions for off-season operation merely require agreement between the parties for any off-season operation. No complete loss of control by the Park District is involved.

Some divestiture of control by the Park District is inherent in any granting of a license. Here, however, the agreement as amended provides for (1) an establishment of the regular prices to be charged the public for the first year, (2) an agreement that those charges will not be raised more than 15% in any year without Park District approval, (3) a determination that the regular season for operation was from Memorial Day to Labor Day, (4) power in the Park District to require the discharge of any Rainbow Bend employee if those employees engage in any disorderly or otherwise "improper" conduct, and (5) a requirement that Rainbow Bend comply with the affirmative action program of the Park District. The documents also require Rainbow Bend to comply with various laws and ordinances which would be binding on them anyway.

█ We recognize the problems that might arise if a unit of local government completely abrogated its function or surrendered control of its property to an independent contractor. That has not occurred here. The operation of the waterslide, although a substantial undertaking, is clearly incidental to the total recreation facilities provided by the Park District at the park and even more incidental to the total operation of the Park District in all of its parks. The Park District has maintained sufficient control over the waterslide operation to protect its property at the site and to protect the public use of the waterslide and the rest of the park. The situation is far different than in *Boseley* where the park authorities had abandoned all control of all but a small portion of the building.

We now turn to plaintiffs' final contention that, even if the Park District was otherwise authorized to enter into the agreement, it could not do so without first advertising for bids from other entities that might be willing to enter into a similar agreement. Plaintiffs maintain the solicitation of bids was required by section 8—1(c) of the Park District Code (Ill. Rev. Stat. 1979, ch. 105, par. 8—1(c)) which in listing the power of park districts, states:

"(c) To acquire by gift, bequest or purchase any personal property necessary for its corporate purposes provided that all contracts for supplies, materials or work involving an expenditure in excess of $4000 shall be let to the lowest responsible bidder, after due advertisement, excepting contracts *which by their nature are not adapted to award by competitive bidding, such as* contracts for the services of individuals possessing a high degree of professional skill where the ability or fitness of the individual plays an important part \*\*\*." (Emphasis added.)

The parties-defendant seek to justify the Park District's decision not to take bids mostly on the theory that the essence of the agreement was the high degree of skill and expertise possessed by persons connected with Rainbow Bend who had also built and operated a similar slide at Peoria. Plaintiffs respond that the ownership and personnel connected with Rainbow Bend could change at any time.

■ We agree that the personnel connected with Rainbow Bend would be an important consideration for the Park District to consider in determining who to select for an undertaking of the nature of the aquaslide. Although both the personnel and ownership could change, this is true of most business entities of size today. The Park District could properly have decided that a change was unlikely. In any event, other considerations also justify the failure to take bids. Section 8—1(c) excepts "contracts which by their nature are not adapted to award by competitive bidding." It then lists examples prefaced by the phrase "such as" indicating the examples given are not exhaustive. Although bids were apparently solicited for the Peoria project, contracts of this nature are inherently "not adapted to award by competitive bidding" because of the many variables involved which need to be worked out. The legislation is keyed to contracts for the furnishing of goods or services for a price or fee. The phrase "an expenditure in excess of $4000" would ordinarily refer to the amount to be paid by the district to the entity furnishing the goods or services. The evidence indicated that the Park District made a substantial investigation with reference to other possible bidders before concluding that seeking bids would not be appropriate. It was acting within its discre-

562

tion when it decided not to do so.

We agree with the trial court that the agreement was within the Park District's powers of contract and properly entered into by it. The judgment denying plaintiffs the relief they requested is affirmed.

Affirmed.

TRAPP and LEWIS, JJ., concur.